## CASE NO. 25-10533

————————

### IN THE

### UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

### H5R, L.L.C.,

**Plaintiff - Appellant,**

**vs.**

### SCOTTSDALE INSURANCE COMPANY,

**Defendant - Appellee.**

————————

**Appealed from the United States District Court for the
Northern District of Texas
USDC Cause No. 3:23-CV-1197**

—————————————————————————————

### BRIEF OF APPELLANT H5R, LLC

—————————————————————————————

PALMER LEHMAN SANDBERG, PLLC
By: /s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg
Texas State Bar No. 00790051
jsandberg@pamlaw.com
8350 N. Central Expressway; Suite 1111
Dallas, Texas 75206
(214) 242-6444/Fax (214) 265-1950
**COUNSEL FOR APPELLANT
H5R, LLC**

### ORAL ARGUMENT REQUESTED

**CASE NO. 25-10533**

——————————

**IN THE**

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

**H5R, L.L.C.,**

**Plaintiff - Appellant,**

**vs.**

**SCOTTSDALE INSURANCE COMPANY,**

**Defendant - Appellee.**

——————————

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Appellant (Plaintiff below):
H5R, LLC
Haileyesus Hailu (nonparty sole member of H5R, LLC)

*Trial Counsel and Appellate Counsel for Appellant-Plaintiff:*
Jeffrey R. Sandberg
Palmer Lehman Sandberg, PLLC
8350 N. Central Expwy, Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950
Email: jsandberg@pamlaw.com

Appellee (Defendant below):

Defendant Scottsdale Insurance Company.

Scottsdale Insurance Company, aka Nationwide Insurance, represents that it is a subsidiary of Nationwide Mutual Insurance Company, which is not publicly-traded. No publicly traded corporation or company owns 10% or more of Nationwide Mutual Insurance Company's stock.

ROA.25-10533.71.


*Trial Counsel and Appellate Counsel for Appellee-Defendant:*

Patrick M. Kemp

Texas Bar No. 24043751

pkemp@smsm.com

Robert G. Wall

Texas Bar No. 24072411

rwall@smsm.com

Leah Fitzgerald

Texas Bar No. 24142898

Ifitzgeraid@smsm.com

Segal McCambridge Singer & Mahoney

100 Congress Ave., Ste. 800

Austin, Texas 78701

(512) 476-7834

(512) 476-7832 – Facsimile


/s/ Jeffrey R. Sandberg

Jeffrey R. Sandberg

Counsel for Appellant

H5R, LLC

## STATEMENT REGARDING ORAL ARGUMENT

H5R, LLC ("H5R" or "Appellant") brought this suit because Scottsdale Insurance Company, a/k/a Nationwide Insurance ("Nationwide," "Insurer" or "Appellee") failed to properly and timely respond to H5R's claim for over a year before ultimately denying H5R's claim.

First, Appellee's assertion that H5R cannot establish the cause of the property damage fails because: (1) Appellee's Corelogic report (ROA.25-10533.1257. (Doc. 49-5, MSJ Response Exh. B) states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020, with all of these hail events being while Appellee's insurance policy was in place after coverage began on December 18, 2018 ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3); and (2) photos of the house depict hail damage to the roof. ROA.25-10533.1273-74, 1276. (Doc. 49-6, Exh. C pp. 15-16, 18); (3) Terry Moore, an uncompensated (the Magistrate Recommendation mistakenly states that Moore is a retained expert1 – ROA.25-10533.1731, RE12) construction expert designated by H5R, testified the damage was caused by hail ROA.25-10533.1347-48, 1362, 1377, 1413-14, 1416-18. (Doc. 49-7, Moore Depo pp. 29-30, 44, 59, 95-96, 98-100); and (4) Appellee's inspector/engineer issued a report stating the roof was

---

1 Mr. Moore testified during his deposition that he was not being compensated and that he did not expect to be compensated if he testifies at trial. ROA.25-10533.861. (Doc. 44-2 p. 9,

damaged by hail ROA.25-10533.1530. (Doc. 49-8, Horne Report pp. 10). While Mr.
Hailu originally believed a broken pipe or the February 2021 ice storm caused the
water damage, which Appellee points to an uncovered loss, the cause of the damage
was ultimately determined by Appellee's experts to be hail. ROA.25-10533.1070.
(Doc. 49-1, Hailu Aff. ¶ 5)

Second, Appellee's argument that it is not liable for the extracontractual claims
fails because: (1) Appellee breached the insurance contract and (2) Appellee's
inaction is a violation of Chapter 542. While Appellee mistakenly represents to the
Court that a denial of coverage notice was sent to H5R on September 5, 2021, there is
no notice letter to H5R on September 5, 2021. Instead, Appellee waited for six months
until March 27, 2022 to finally send a written notice denying coverage. ROA.25-
10533.745. (Doc. 41-9, Def. MSJ Exh. A-8)

These differences deserve the full vetting of oral argument.

Moore Depo. p. 10)

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .........................................................i

STATEMENT REGARDING ORAL ARGUMENT............................................. iii

TABLE OF CONTENTS....................................................................................v

TABLE OF AUTHORITIES ............................................................................. ix

INTRODUCTION............................................................................................1

JURISDICTIONAL STATEMENT .........................................................................1

ISSUES PRESENTED FOR REVIEW ...................................................................2

STATEMENT OF THE CASE..............................................................................4

A.     Factual Background. ........................................................................4

B.     Procedural History ..........................................................................6

SUMMARY OF ARGUMENT ............................................................................8

BRIEF OF ARGUMENT..................................................................................10

STANDARD OF REVIEW - SUMMARY JUDGMENT .....................................10

ISSUE ONE (Restated)..............................................................................11
The Trial Court Erred When It Overruled H5R's Objection to Appellee's
Hearsay Statement that H5R's Claim Was Denied in September 2021 Because
the Log Relied Upon by Moe Does Not State a Claim Denial Notice Was Sent
to H5R and There Is No Actual Claim Denial Document. (ROA.25-
10533.1746, RE27.)

ARGUMENT AND AUTHORITIES FOR ISSUE ONE .......................................11

A.     The Statement By Moe Is Hearsay – the Log Entry Does Not State
       a Denial of the Claim Was Sent to H5R…...................................11

B.    The Statement By Moe Is an Unsupported Conclusion –
      the Log Entry Does Not State a Denial of the Claim Was Sent to H5R.. .....13

ISSUE TWO (Restated) ........................................................................14
The Trial Court Erred When It Overruled H5R's Objections to the
Unsupported Conclusions in Appellee's Horne Report and Appellee's Moody
That the Hail Damage to the Roof Occurred in 2011.
(ROA.25-10533.1746, RE27.)

ARGUMENT AND AUTHORITIES FOR ISSUE THREE ..................................16

ISSUE THREE (Restated) ....................................................................16
The Trial Court Erred When It Granted Summary Judgment in Favor of
Appellee and Against H5R on H5R's Breach of Contract Claim Because a
Covered Cause of Loss (Hail) Occurred During the Policy Period.
(ROA.25-10533.1739, 1810; RE20, 43.)

A.    Applicable Law – Breach of Contract/Insurance Policy Claim... ................16

B.    *Appellee's* Evidence Establishing Hail Damage to the Roof and that
      Significant Hail Occurred During the Policy Period ...................................17

   1.  Hail Damage Occurred During the Policy Period. .......................................17

   2.  The Coverage Period Is From 2018-2021, Not 2020-2021...........................18

   3.  The House Was Damaged by Hail. ...............................................................19

   4.  H5R Does Not Seek Damages for Damage Outside the Scope
       of Coverage...............................................................................................20

   5.  Nationwide Breached the Insurance Contract…………………………….20

ARGUMENT AND AUTHORITIES FOR ISSUE FOUR ...................................21

ISSUE FOUR (Restated) ......................................................................21
The Trial Court Erred When It Granted Summary Judgment in Favor of
Appellee and Against H5R on H5R's Common Law and Bad Faith Claims
Because a Covered Cause of Loss (Hail) Occurred During the Policy Period.
(ROA.25-10533.1739, 1810; RE20, 43.)

A.      There Was No Bona-Fide Dispute.................................................22

1.  Appellee Improperly Pointed to the 2011 Hail Event and There Was
    No Hail Damage to the Roof When H5R Purchased the House in 2016.....23

2.  Appellee Did Not Deny the Claim Until March 27, 2022............................24

B.      Because Appellee Breached the Insurance Contract by Failing
        to Timely Pay H5R's Claim, Appellee Is Not Entitled to Summary
        Judgment on H5R's Bad Faith Claims.. .........................................24

1.  Hail Damage Occurred During the Policy Period. .......................................26

2.  The Coverage Period Is From 2018-2021, Not 2020-2021...........................18

3.  The House Was Damaged by Hail. .............................................................27

4.  H5R Does Not Seek Damages for Damage Outside the Scope
    of Coverage...............................................................................................28

5.  Nationwide Breached the Insurance Contract... ........................................28

ARGUMENT AND AUTHORITIES FOR ISSUE FIVE......................................29

ISSUE FIVE (Restated) ...................................................................................29
The Trial Court Erred When It Granted Summary Judgment in Favor
of Appellee and Against H5R on H5R's Chapter 542 Claims Because a
Covered Cause of Loss (Hail) Occurred During the Policy Period.
(ROA.25-10533.1739, 1810; RE20, 43.)

A.      H5R Is Entitled to the Policy Benefits.........................................29

1.  Hail Damage Occurred During the Policy Period ….................................30

2.  The Coverage Period Is From 2018-2021, Not 2020-2021...........................31

3.  The House Was Damaged by Hail. .............................................................31

4.  H5R Does Not Seek Damages for Damage Outside the Scope
    of Coverage...............................................................................................32

B.      Appellee Improperly Pointed to the 2011 Hail Even and There Was No Damage to the Roof When H5R Purchased the House in 2016. ..............32

C.      Appellee Did Not Act Timely Because Appellee Did Not Deny the Claim Until March 27, 2022 .................................................................................33

D.      Appellee Failed to Pay H5R's Claim …. .......................................................34

ARGUMENT AND AUTHORITIES FOR ISSUE SIX .........................................35

ISSUE SIX (Restated) ............................................................................................35
The Trial Court Erred When It Granted Appellee's Objections to Non-Retained Terry Moore's Expert Testimony That Hail Damaged the Roof.
(ROA.25-10533.1731, 1807, RE12, 40.)

A.      Legal Standard – Expert Opinions ................................................................36

B.      Mr. Moore Is Properly Designated and Appellee Elicited the Deposition Testimony. ......................................................................................................37

C.      Consideration of the Four Facts Weighs Against Exclusion ........................37

CONCLUSION AND PRAYER ..............................................................................44

CERTIFICATE OF SERVICE ................................................................................45

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ..........45

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **PAGE**

*Advanced Indicator & Mfg. v. Acadia Ins. Co.*,
    50 F.4th 469 (5th Cir. 2022). ........................................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). ............................10

*Aranda v. Insurance Co. of N. Am.*,
    748 S.W.2d 210 (Tex.1988). ........................................................22

*Arnold v. National County Mut. Fire Ins. Co.*,
    725 S.W.2d 165 (Tex.1987). ........................................................22

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). ................10, 20, 22

*Coleman v. Chevron Phillips Chem. Co. LP*,
    No. CV H-23-350, 2024 WL 460248 (S.D. Tex. Feb. 6, 2024)....................37

*Duffy v. Leading Edge Prods*,
    44 F.3d 308 (5th Cir. 1995). ........................................................10

*ELCA Enters. v. Sisco Equip. Rental & Sales*,
    53 F.3d 186 (8th Cir.1995). ....................................................41, 43

*Employers Cas. Co. v. Block*,
    744 S.W.2d 940 (Tex. 1988). ......................................................16

*Fiess v. State Farm Lloyds*,
    392 F.3d 802 (5th Cir. 2004). ......................................................16

*Fuller v. CIG Fin., LLC*,
    No. 3:22-cv-1289-D, 2023 WL 8482889 (N.D. Tex. Dec. 7, 2023). ......37, 42

*Galindo v. Precision Am. Corp*,
    754 F.2d 1212 (5th Cir. 1985). ..................................................13, 14

*Galvez v. KLLM Transp. Servs., LLC.,*
  575 F. Supp.3d 748 (N.D. Tex. 2021). ...................................................41, 43

*Geiserman v. MacDonald,*
  893 F.2d 787 (5th Cir. 1990). .........................................................................35

*Higginbotham v. State Farm Mut. Auto. Ins. Co.,*
  103 F.3d 456 (5th Cir.1997) ............................................................................22

*Lopez v. Fun Eats and Drinks, LLC,*
  No. 3:18-cv-1091-X, 2021 WL 3502361 (N.D. Tex. July 16, 2021)............37

*Lyons v. Millers Cas. Ins. Co. of Tex.,*
  866 S.W.2d 597 (Tex. 1993). .........................................................................22

*McIntosh v. Partridge,*
  540 F.3d 315 (5th Cir. 2008). ..................................................................11, 14

*Smith Int'l, Inc. v. Egle Grp., LLC,*
  490 F.3d 380 (5th Cir. 2007). .........................................................................16

*Stagliano v. Cincinnati Ins. Co.,*
  633 F. App'x  217 (5th Cir. 2015). .................................................................21

*State Farm Fire & Cas. Co. v. Simmons,*
  963 S.W.2d 42 (Tex. 1998) ............................................................................21

*Thompson v. Zurich American Ins. Co.,*
  664 F. 3d 62 (5th Cir. 2011) ...........................................................................22

*Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.,*
  592 F.3d 687 (5th Cir. 2010). ...................................................................10, 22

*United States v. Ned.,*
  637 F.3d 562 (5th Cir. 2011). .........................................................................12

*Universe Life Ins. Co. v. Giles,*
  950 S.W.2d 48 (Tex. 1997). ...........................................................................22

*USAA Tex. Lloyds Co. v. Menchaca,*
  545 S.W.3d 479 (Tex. 2018). .........................................................................24

*Viles v. Security Nat'l Ins. Co.*,
    788 S.W.2d 566 (Tex.1990). ..............................................................................22

*Wegener v. Johnson*,
    527 F.3d 687 (8th Cir. 2008). ...................................................................41, 43

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,
    801 F.3d 512 (5th Cir. 2015). ...................................................................29, 30

*Wilander v. McDermott Int'l, Inc.*,
    887 F.2d 88 (5th Cir. 1989), *aff'd*, 498 U.S. 337, 111 S. Ct. 807,
    112 L. Ed. 2d 866 (1991). ..............................................................................12

## STATUTES                                                         PAGE

28 U.S.C. § 1291. ..............................................................................................1

## RULES                                                            PAGE

FED. R. CIV. P. 26. ...........................................................................................36

FED. R. CIV. P. 37. ...........................................................................................37

FED. R. CIV. P. 56. ...........................................................................................10

## CASE NO. 25-10533

_____

### IN THE

### UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

### H5R, L.L.C.,

### Plaintiff - Appellant,

### vs.

### SCOTTSDALE INSURANCE COMPANY,

### Defendant - Appellee.

_____

### Appealed from the United States District Court for the
### Northern District of Texas
### USDC Cause No. 3:23-CV-1197

_____

### BRIEF OF APPELLANT H5R, LLC

_____

TO THE COURT OF APPEALS:

Appellant H5R, LLC ("H5R" or "Appellant"), submits this Appellant's Brief.

Appellees Scottsdale Insurance Company, a/k/a Nationwide Insurance  shall be

referred to as "Nationwide," "Insurer" or "Appellee."

## <u>JURISDICTIONAL STATEMENT</u>

Jurisdiction exists pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

### ISSUE ONE

The Trial Court Erred When It Overruled H5R's Objection to Appellee's Hearsay Statement that H5R's Claim Was Denied in September 2021 Because the Log Relied Upon by Moe Does Not State a Claim Denial Notice Was Sent to H5R and There Is No Actual Claim Denial Document. ROA.25-10533.1746, RE27.

### ISSUE TWO

The Trial Court Erred When It Overruled H5R's Objections to the Unsupported Conclusions in Appellee's Horne Report and Appellee's Moody That the Hail Damage to the Roof Occurred in 2011. ROA.25-10533.1746, RE27.

### ISSUE THREE

The Trial Court Erred When It Granted Summary Judgment in Favor of Appellee and Against H5R on H5R's Breach of Contract Claim Because a Covered Cause of Loss (Hail) Occurred During the Policy Period.  ROA.25-10533.1739, 1810; RE20, 43.

### ISSUE FOUR

The Trial Court Erred When It Granted Summary Judgment in Favor of Appellee and Against H5R on H5R's Common Law and Bad Faith Claims Because a Covered

2

Cause of Loss (Hail) Occurred During the Policy Period.  <u>ROA.25-10533.1739, 1810;</u>
<u>RE20, 43.</u>

## ISSUE FIVE

The Trial Court Erred When It Granted Summary Judgment in Favor of Appellee and
Against H5R on H5R's Chapter 542 Claims  Because a Covered Cause of Loss (Hail)
Occurred During the Policy Period.  <u>ROA.25-10533.1739, 1810; RE20, 43.</u>

## ISSUE SIX

The Trial Court Erred When It Granted Appellee's Objections to <u>Non-Retained</u> Terry
Moore's Expert Testimony That Hail Damaged the Roof.  <u>ROA.25-10533.1731, 1807,</u>
<u>RE12, 40.</u>

## STATEMENT OF THE CASE

**A.     Factual Background.**

H5R became the owner of the house located at 2665 Farmers Branch Lance, Dallas, Texas 75234 (the "House") on November 29, 2016, as shown by the Warranty Deed (the "Deed) identifying H5R as the grantee. ROA.25-10533.1070, 1072. (Doc. 49-1, Hailu Aff. ¶ 3; Doc. 49-2, Deed) The roof was not damaged, by hail or otherwise, when H5R became the owner of the House. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 3)

After H5R became the owner of the House, H5R obtained homeowners' coverage from Appellee beginning on December 18, 2018, and Appellee insured the House continuously under this policy and its renewals until the homeowner's insurance coverage was canceled after this dispute arose. ROA.25-10533.494, 1070, 1075, 1166. (Doc. 49-1, Hailu Aff. ¶ 4; 2018 Policy p. 2; 2019 Policy p. 2; 2020 Policy p. 2) The policies include hail and windstorm coverage. ROA.25-10533.577, 1248. ((Doc. 41-2, 2018 Policy p. 92; Doc. 49-3, 2019 Policy p. 84 Sec. A.4; Doc. 49-4, 2020 Policy p. 84 Sec. A.4)

In February of 2021, Mr. Hailu learned from the tenant that there was water entering the house from the roof and that a broken pipe caused water damage in the house. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 5) Mr. Hailu originally believed a broken pipe or the February 2021 ice storm caused the water damage,

which Appellee points to as an uncovered loss, but the cause of the damage was ultimately determined by Appellee's experts to be hail. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 5)

Appellee's Corelogic report (Exh. B) states that ¾ inch hail occurred at the house as recently as May 24, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020, with both being while Appellee's insurance policy was in place after coverage began on December 18, 2018 ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3); and (2) photos of the house depict hail damage to the roof. ROA.25-10533.1273-74, 1276. (Exh. B pp. 15-16, 18); (3) Terry Moore, an uncompensated construction expert designated by H5R, testified the damage was caused by hail ROA.25-10533.1347-48, 1362, 1377, 1413-14, 1416-18. (Doc. 49-7, Moore Depo pp. 29-30, 44, 59, 95-96, 98-100); and (3) Appellee's inspector/engineer issued a report stating the roof was damaged by hail. ROA.25-10533.1530. (Doc. 49-8, Horne Report pp. 10).

Although Appellee claims a log report states that Appellee denied H5R's claim in September 2021, the log report does actually state this. Instead, Appellee's log states "Closing call prev made. Sent disclaimer to insd -John Sayre (09/08/2021 11:24 AM)" ROA.25-10533.593. (Doc. 41-3 Log p. 3) In fact, "H5R did not receive a written statement from Nationwide that it was denying coverage in 2021." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6) "Defendant did not receive a written notice

denying coverage until H5R received Defendant's March 27, 2022 letter." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6)

**B.    Procedural History.**

On August 8, 2022, H5R filed the Original Petition in the 298th Judicial District Court of Dallas County, Texas. ROA.25-10533.23. On May 17, 2023, H5R filed its Amended Petition in the 298th District Court of Dallas County, Texas. ROA.25-10533.48.  On May 24, 2023, Appellee filed a Notice of Removal to the United States District Court for the Northern District of Texas, Dallas Division. (OA.25-10533.12.

Appellees filed a motion to strike the testimony of expert Terry Moore and a motion for summary judgment. ROA.25-10533.433, 835. H5R filed a  response to Appellee's motion to strike the expert testimony and a response to the motion for summary judgment, objecting to part of Appellee's summary judgment evidence. ROA.25-10533.1058, 1629.

On January 10, 2025, the United Stated Magistrate Judge issued the Memorandum Opinion granting Appellee's motion to strike the expert testimony. ROA.25-10533.1731, RE12. The Magistrate Judge also issued Findings, Conclusions and Recommendation of Magistrate Judge (the "Recommendation"), recommending that H5R's objections to Appellee's summary judgment evidence be denied and that the Appellees' Motion for Summary Judgment be granted. ROA.25-10533.1739, RE20.

On January 23, 2025, H5R filed its Objections to the Magistrate's Recommendation and Objections to the Magistrate's Memorandum Opinion and Order. ROA.25-10533.1759, 1772. On February 6, 2025, Appellee its responses to H5R's Objections. ROA.25-10533.1779, 1787.  On February 19, 2025, H5R filed replies to Appellee's objections. ROA.25-10533.1797, 1801.

On March 25, 2025, the District Court issued an Order denying H5R's Objections to the Magistrate's Memorandum Opinion and issued an Order granting the Appellee's Motion for Summary Judgment. ROA.25-10533.1807, 1809; RE40, 42.

On March 25, 2025, the District Court rendered final judgment. ROA.25-10533.1830, RE43.

On April 17, 2025, H5R perfected its appeal without further motion to the District Court. ROA.25-10533.1822, RE44.

## SUMMARY OF ARGUMENT

The bottom line is this: H5R bought insurance from Appellee in 2018, and after renewing the policy twice, Appellee denied H5R's claim that the roof was damaged by hail and was leaking. Why was the claim denied? Because Appellee obtained a "Corelogic" report showing that a hail event occurred in 2011 in addition to hail events in 2019 and 2020. With no explanation or factual basis, and despite the 2019 and 2020 hail events being more recent to the 2021 leak and claim, Appellee and its experts have pointed to the 2011 hail event as the cause for the hail damage to the roof and water leak. Why? Because Appellee did not begin to insure the property until 2018.

In any event, even if the denial of H5R's objection to Appellee's expert opinion/unsupported conclusion is not reversed, there is summary judgment evidence that the 2011 hail event is not the cause of the roof damage and that the 2019 and 2020 hail events are the cause: "[t]he roof was not damaged, by hail or otherwise, when H5R became the owner of the house" in 2016. ROA.25-10533.1069, 1072. (Doc. 49-1, Hailu Decl. p. 2, ¶ 3; Doc. 49-2, Deed)

Further, Appellee waited until almost a year after the claim to send H5R a denial of the claim. Appellee points to an internal log to argue that Appellee denied H5R's claim in September 2021, but the log relied upon by Mr. Moe (Appellee's

employee) does not state a claim denial notice was sent to H5R and there is no actual claim denial document. ROA.25-10533.1746, RE27.

Further, even if the denial of H5R's objection to Appellee's hearsay is not reversed, there is summary judgment evidence that the claim was not denied until March 27, 2022, a year after the claim was made. ROA.25-10533.592. (Doc. 41-3, Log p. 3) "H5R did not receive a written statement from Nationwide that it was denying coverage in 2021." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6) "Defendant did not receive a written notice denying coverage until H5R received Defendant's March 27, 2022 letter." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6)

## ARGUMENT

## STANDARD OF REVIEW – SUMMARY JUDGMENT

The Court reviews de novo a district court's award of summary judgment, applying the same standard as the district court. *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.,* 592 F.3d 687, 690 (5th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing that there is no genuine issue for trial. *Duffy v. Leading Edge Prods*., 44 F.3d 308, 312 (5th Cir. 1995). If the moving party meets this burden, the nonmoving party who will have the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The appellate court considers the evidence in the light most favorable to the nonmoving party. *Duffy*, 44 F.3d at 312.

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

## ISSUE ONE (Restated)

The Trial Court Erred When It Overruled H5R's Objection to Appellee's Hearsay Statement that H5R's Claim Was Denied in September 2021 Because the Log Relied Upon by Moe Does Not State a Claim Denial Notice Was Sent to H5R and There Is No Actual Claim Denial Document. <u>ROA.25-10533.1746, RE27.</u>

## ARGUMENT AND AUTHORITIES FOR ISSUE ONE

An appellate court reviews rulings on evidentiary objections for abuse of discretion. *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir. 2008).

**A.     The Statement By Moe Is Hearsay – the Log Entry Does Not State a Denial of the Claim Was Sent to H5R.**

H5R made the following evidentiary objection:

> <u>Doc. 41-1: Def. MSJ. Exh. A (Moe Decl.)</u> -
> Par. 6: H5R objects to the statement that Defendant denied the claim on September 21, 2021 as hearsay and an unsupported factual conclusion because the referenced document (Doc. 41-3, MSJ Exh. A-2 p. H5R 00111) is not a written notice to H5R stating the Defendant was denying coverage. Instead, the document is merely a log entry dated Sept. 5, 2021 stating a disclaimer was sent to H5R. Notably, Defendant's exhibits do not include a Sept. 5, 2021 written notice denying H5R's claim.

<u>ROA.25-10533.1059.</u> (Doc. 49, MSJ Response p. 2)

The Recommendation states:

> H5R objects to Jonathan Moe's statement in his declaration that Scottsdale Insurance denied the claim on September 21, 2021, on the basis that it is hearsay and an unsupported factual conclusion. *See* Dkt. No. 49 at 2.
> But Mr. Moe's statement that the claim was denied by September 9, 2021, *see* Dkt. No. 41-1 at 3, is based on Scottsdale Insurance's activity log, *see* Dkt. No. 41-3. And the activity log is admissible as a

business record under Federal Rule of Evidence 803(6). *See* Dkt. No. 41-1 at 1 ("The activity log and claims file materials were kept in the course of regularly conducted business activity of Scottsdale in investigating claims, are routinely made and kept in the course of that business, and it is Scottsdale's usual practice to keep such records.").

And, so, this objection should be overruled.

ROA.25-10533.1746. (Doc. 65, Recommendation p. 8)

The Rule 803(6) business record exception to the hearsay rule requires the following:

> (a) That the document have been made "at or near" the time of the matters recorded therein; (b) that the document have been prepared by, or from information transmitted by a person "with knowledge of the matters recorded"; (c) that the person or persons who prepared the document have been engaged in preparing it, in some undertaking, enterprise or business which can fairly be termed a "regularly conducted business activity"; (d) that it have been the "regular practice" of that business activity to make documents of that nature; and (e) that the documents have been retained and kept in the course of that or some other regularly conducted business activity.

*Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 91 (5th Cir. 1989), *aff'd*, 498 U.S. 337, 111 S. Ct. 807, 112 L. Ed. 2d 866 (1991); *see also United States v. Ned*, 637 F.3d 562, 569 (5th Cir. 2011).

The testimony by Appellee's witness, Moe testimony is admitted by Moe to be based upon the claim file: "The claim file shows that Scottsdale denied the claim following receipt of the engineer's report no later than September 9, 2021. (Ex. A-2, at H5R 00111)." ROA.25-10533.484. (Doc. 41-1, Moe Aff. P. 3, sec. 6) In turn, the

record relied upon by Moe does not state that H5R was notified that H5R's claim was denied – it instead states "Closing call prev made. Sent disclaimer to insd -John Sayre (09/08/2021 11:24 AM)" ROA.25-10533.593. (Doc. 41-3 Log p. 3) Thus, while the log is arguably a business record, it does not contain the information described in Moe's affidavit. This renders the statement in Moe's affidavit hearsay.

**B.      The Statement By Moe Is an Unsupported Conclusion – the Log Entry Does Not State a Denial of the Claim Was Sent to H5R.**

For the same reasons established above, the statement in Moe's affidavit is an unsupported factual conclusion. Affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient of themselves to support a grant of summary judgment. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

The testimony by Appellee's witness, Moe testimony is admitted by Moe to be based upon the claim file: "The claim file shows that Scottsdale denied the claim following receipt of the engineer's report no later than September 9, 2021. (Ex. A-2, at H5R 00111)." ROA.25-10533.484. (Doc. 41-1, Moe Aff. P. 3, sec. 6) In turn, the record relied upon by Moe does not state that H5R was notified that H5R's claim was denied – it instead states "Closing call prev made. Sent disclaimer to insd -John Sayre (09/08/2021 11:24 AM)" ROA.25-10533.593. (Doc. 41-3 Log p. 3) Thus, while the log is arguably a business record, it does not contain the information described in Moe's affidavit. This renders the statement an unsupported factual conclusion.

## ISSUE TWO (Restated)

The Trial Court Erred When It Overruled H5R's Objections to the Unsupported Conclusions in Appellee's Horne Report and Appellee's Moody That the Hail Damage to the Roof Occurred in 2011. ROA.25-10533.1746, RE27.

## ARGUMENT AND AUTHORITIES FOR ISSUE TWO

An appellate court reviews rulings on evidentiary objections for abuse of discretion. *McIntosh*, 540 F.3d at 320 (5th Cir. 2008). Affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient of themselves to support a grant of summary judgment. *Galindo*, 754 F.2d at 1216.

H5R objected to the statements as unsupported conclusions. ROA.25-10533.1059. (Doc. 49, MSJ Response p. 2) The objection was based upon Appellee's Corelogic report (ROA.25-10533.1257., Doc. 49-5, MSJ Response Exh. B), which states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020, with all of these hail events being while Appellee's insurance policy was in place after coverage began on December 18, 2018 ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3)

Notably, Appellee's Response points to no summary judgment evidence where Appellee's experts provide a basis, factual or otherwise, for ignoring the hail events

while Appellee's insurance policy/renewals were in place. ROA.25-10533.1658.

(Doc. 54, Reply p. 2)  Nonetheless, the Recommendation overruled the objection:

> Specifically, Scottsdale Insurance's designated expert Eric Moody stated that "[t]o the extent that any of the noted distress in the corrugated cementitious tile roof was related to hail it is more probable than not that it occurred on May 24th, 2011." Dkt. No. 41-17 at 4. And H5R argues that this statement "ignore[s] summary judgment evidence" – Scottsdale Insurance's Corelogic report – which states that 3/4- inch hail occurred at the Property as recently as May 24, 2019 [sic], and 3/4-inch hail occurred within a mile of the Property as recently as August 16, 2020. See Dkt. No. 49 at 2.
>
> * * *
>
> Mr. Moody's expert opinion is based on the methodology he outlines in his report. See Dkt. No. 41-17 at 3-5. And it is supported by the Corelogic report, which indicated that approximately 1.6-inch hail may have fallen at the Property on May 24, 2011. See Dkt. No. 41-7 at 19. And, so, H5R has not provided grounds for why Mr. Moody's opinion is factually or legally unsupported and this objection, too, should be overruled.

ROA.25-10533.1747-48. (Doc. 65, Recommendation pp. 9-10)

As shown above, Appellee's Corelogic Report states that hail events occurred in multiple years – both in 2011 and then subsequently in 2019 and 2020. ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3) So, why did Appellee's experts conclude that the roof was damaged as a result of the 2011 hail event? Appellee's experts don't say why, but it is not difficult to figure out why – 2011 is before coverage commenced in 2018.

## ISSUE THREE (Restated)

The Trial Court Erred When It Granted Summary Judgment in Favor of Appellee and Against H5R on H5R's Breach of Contract Claim Because a Covered Cause of Loss (Hail) Occurred During the Policy Period.  ROA.25-10533.1739, 1810; RE20, 43.

## ARGUMENT AND AUTHORITIES FOR ISSUE THREE

### A.    Applicable Law – Breach of Contract/Insurance Policy Claim.

Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). "An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by [the] policy." *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988) (cit. omitted). Evidence that a covered event caused all of the damage or that covered and excluded events independently caused the damage is sufficient evidence but is not necessary. *See Advanced Indicator & Mfg. v. Acadia Ins. Co.*, 50 F.4th 469, 477 (5th Cir. 2022) (per curiam); *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 (5th Cir. 2004).

**B.** ***Appellee's*** **Evidence Establishing Hail Damage to the Roof and that Significant Hail Occurred During the Policy Period.**

**1.    Hail Damage Occurred During the Policy Period.**

There is evidence that the hail damage occurred after December 18, 2018 – the date that Appellee admits that Appellee's coverage began. <u>ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3)</u>. After H5R became the owner of the House, H5R obtained homeowners' coverage from Appellee beginning on December 18, 2018, and Appellee insured the House continuously under this policy and its renewals until the homeowner's insurance coverage was canceled after this dispute arose. <u>ROA.25-10533.494, 1070, 1075, 1166.</u> (Doc. 49-1, Hailu Aff. ¶ 4; 2018 Policy p. 2; 2019 Policy p. 2; 2020 Policy p. 2) The policies include hail and windstorm coverage. <u>ROA.25-10533.577, 1248.</u> ((Doc. 41-2, 2018 Policy p. 92; Doc. 49-3, 2019 Policy p. 84 Sec. A.4; Doc. 49-4, 2020 Policy p. 84 Sec. A.4)

Appellee's Corelogic report (<u>ROA.25-10533.1257.</u>, Doc. 49-5, MSJ Response Exh. B) states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020, with all of these hail events being while Appellee's insurance policy was in place after coverage began on December 18, 2018 <u>ROA.25-10533.483.</u> (Doc. 41-1, Def. MSJ Exh. A-1 Moe

Decl. par. 3) These dates are <u>after</u> the date that coverage began on December 18, 2018. <u>ROA.25-10533.483.</u> <u>(Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3)</u>.

## 2.    The Coverage Period Is From 2018-2021, Not 2020-2021.

Next, the Recommendation improperly limits the analysis of the coverage period to a renewal from December 20, 2020 to December 2021. <u>ROA.25-10533.1754.</u> Doc. 65, Recommendation p. 16) This is inaccurate - the 2018 policy (<u>ROA.25-10533.1074.</u> Doc. 49-3) and 2019 renewal (<u>ROA.25-10533.1165.</u> Doc. 49-4) are included in the summary judgment evidence and discussed in H5R's Response in support of H5R establishing the policy/renewal period. <u>ROA.25-10533.1061.</u> (Doc. 49, Response p. 4) As a result, the ¾ inch hail events described in Appellee's summary judgment evidence on May 24, 2019 and on August 16, 2020 occurred during the coverage period. <u>ROA.25-10533.654, 1257.</u> (MSJ exh. Doc. 41-7 pg. 19/108; MSJ Response Exh. B, Corelogic Report)

The Amended Petition states on page 2:  H5R and Nationwide entered into an insurance contract on or about December 17, 2020 in the form of a renewal of policy #CPS32115869 (the "Contract"). <u>ROA.25-10533.49.</u> (Doc. 1-2, Amended Petition p. 2) Appellee's overly restrictive interpretation of the Amended Petition should not be adopted by the Court – a fair reading of the Amended Petition shows that H5R'S claims are based upon the policy as renewed in 2020.

### 3.     The House Was Damaged by Hail.

Appellee argued that there is no evidence that the House was damaged by hail. But, once again, Appellee ignores its own evidence – Appellee's expert report by G. Horne, PE states that snow and ice did not damage the roof tiles – instead - "many of the holes [in the roof] were consistent with impact from hail." ROA.25-10533.645 (Doc. 41-7, Horne Report p. 10 Conclusion #2, 3) The same report contains photos of the house that depict hail damage to the roof. ROA.25-10533.694-97, 1273-74, 1276. (Doc. 41-7 pp. 59-62; MSJ Response Exh. C, Moore Depo. pp. 15- 16, 18. This determination and also the same Corelogic report information was repeated and relied upon in the report of another of Appellee's experts, Eric Moody. ROA.25-10533.800 (Doc. 41-17, Moody Report p. 3)

Appellee also ignores the deposition testimony by Terry Moore, an uncompensated construction expert designated by H5R, who agreed with Appellee's experts that the damage was caused by hail. ROA.25-10533.1347-48, 1362, 1377, 1413-14, 1416-18. (Doc. 49-7, Moore Depo pp. 29-30, 44, 59, 95-96, 98-100) Appellee also point to Appellee's expert's testimony that the hail did not occur during the ice storm on February 15, 2021. Critically, this does not mean that the hail damage occurred outside the coverage period (being after December 18, 2018).

**4.    H5R Does Not Seek Damages for Damage Outside the Scope of Coverage.**

Appellee argued on page 12 & 13 that the insurance contract does not provide coverage for damage caused by winter weather and broken pipes. H5R is not seeking damages for losses caused by winter weather and broken pipes. Yes, when Mr. Hailu was informed by the tenant that there was water inside the house, Mr. Hailu believed that the February 2021 ice storm caused the damage based upon what a tenant told Mr. Hailu, and this is what Mr. Hailu reported to Appellee Scottsdale Insurance Company, a/k/a Nationwide Insurance. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 5) However, Mr. Hailu subsequently learned from Appellee's representative/inspector, Greg Horne, PE, that hail damaged the roof. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 5)

**5.    Nationwide Breached the Insurance Contract.**

A failure to pay a covered loss is a breach of an insurance contract. H5R did not receive a payment from Appellee on this claim. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 6)

In conclusion, there is summary judgment evidence that supports each element of H5Rs breach of contract claim, and the summary judgment evidence in favor of Appellee should be reversed. *See* FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 321.

## ISSUE FOUR (Restated)

The Trial Court Erred When It Granted Summary Judgment in Favor of Appellee and Against H5R on H5R's Common Law and Bad Faith Claims Because a Covered Cause of Loss (Hail) Occurred During the Policy Period. <u>ROA.25-10533.1739, 1810; RE20, 43.</u>

## ARGUMENT AND AUTHORITIES FOR ISSUE FOUR

The Recommendation (ROA.25-10533.1755. Doc. 65, Recommendation p. 17) holds that because there was no coverage for the hail damage to the roof, H5R's claim for breach of the duty of good faith and fair dealing fails. Because there is summary judgment evidence, as detailed above, of coverage for the hail damage to the roof during the policy/renewals period, the Court erred when it adopted the Recommendation and granted summary judgment against H5R and in favor of Appellee.

Under Texas law, an action for breach of the common-law duty of good faith and fair dealing requires a showing that the insurer's liability is "reasonably clear." *Stagliano v. Cincinnati Ins. Co.,* 633 F. App'x 217, 221 (5th Cir. 2015) (quoting *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998)). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *Simmons*, 963 S.W.2d at 44.

## A.    There Was No Bona-Fide Dispute.

An insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. National County Mut. Fire Ins. Co*., 725 S.W.2d 165, 167 (Tex.1987). A breach of the duty of good faith and fair dealing is established when: (1) an insurer's failure to settle (or pay) "a claim after its liability has become reasonably clear and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Aranda v. Insurance Co. of N. Am*., 748 S.W.2d 210, 213 (Tex.1988); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997). Whether there is a reasonable basis for denial [of a claim] must be judged by the facts before the insurer at the time the claim was denied. *Viles v. Security Nat'l Ins. Co*., 788 S.W.2d 566 (Tex.1990).

An insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear. *Thompson v. Zurich American Ins. Co*., 664 F. 3d 62, 69 (5th Cir. 2011). An insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *Id.* To avoid liability for denying or delaying a claim, an insurer must establish a bona fide controversy with a reasonable basis for denial or delay. *Lyons v. Millers Cas. Ins. Co. of Tex*., 866 S.W.2d 597, 600 (Tex. 1993); *Higginbotham v. State Farm Mut. Auto. Ins. Co*., 103 F.3d 456, 459 (5th Cir.1997).

**1.      Appellee Improperly Pointed to the 2011 Hail Event and There Was No Hail Damage to the Roof When H5R Purchased the House in 2016.**

Here, Appellee breached its duty of good faith and fair dealing by summarily concluding that the hail damage occurred in 2011, which was outside the coverage period. Instead, the proper coverage period begins with the 2018 policy - which commences coverage on December 18, 2018 (ROA.25-10533.1074. Doc. 49-3) and continues with the 2019 renewal (ROA.25-10533.1165. Doc. 49-4), both of which are included in the summary judgment evidence and discussed in H5R's Response in support of H5R establishing the policy/renewal period. ROA.25-10533.1061.  (Doc. 49, Response p. 4) Appellee breached its duty by pointing to the 2011 hail event instead of the more recent hail events - Appellee illogically ignores the evidence in the Appellee's Corelogic report (ROA.25-10533.1257., Doc. 49-5, MSJ Response Exh. B) states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020.

Further, "[t]he roof was not damaged, by hail or otherwise, when H5R became the owner of the house" in 2016. ROA.25-10533.1069, 1072. (Doc. 49-1, Hailu Decl. p. 2, ¶ 3; Doc. 49-2, Deed)

**2.    Appellee Did Not Deny the Claim Until March 27, 2022.**

Further, Appellee provides no factual basis for Appellee's delay until March 27, 2022.  As shown in Issue No. 1, H5R objected to Appellee's hearsay statement that H5R's claim was denied in September 2021 because the log relied upon by Moe does not state a claim denial notice was sent to H5R and there is no actual claim denial document. ROA.25-10533.1746, RE27. Accordingly, Appellee's summary judgment evidence does not establish that Appellee denied the claim in September 2021.

Further, there is summary judgment evidence that the claim was not denied until March 27, 2022, a year after the claim was made. ROA.25-10533.592. (Doc. 41-3, Log p. 3) "H5R did not receive a written statement from Nationwide that it was denying coverage in 2021." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6) "Defendant did not receive a written notice denying coverage until H5R received Defendant's March 27, 2022 letter." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6)

**B.    Because Appellee Breached the Insurance Contract by Failing to Timely Pay H5R's Claim, Appellee Is Not Entitled to Summary Judgment on H5R's Bad Faith Claims.**

Because H5R's breach of contract claim does not fail, the bad faith claim does not fail because H5R's independent injury – the loss of rent and lost property value, are recoverable as damages. In *Menchaca*, the Texas Supreme Court "distill[ed] from [its previous] decisions five distinct but interrelated rules that govern the relationship

between contractual and extra-contractual claims in the insurance context." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489, 500 (Tex. 2018). Two of those rules are directly relevant to this case: the "entitled-to-benefits rule" and the "independent-injury rule."

The "entitled-to-benefits" rule provides that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the [Insurance Code] if the insurer's statutory violation causes the loss of the benefits." *Menchaca*, at 495. The *Menchaca* Court further explained:

> *Stoker* and *Castañeda* stand for the general rule that an insured cannot recover policy benefits as damages for an insurer's extra-contractual violation if the policy does not provide the insured a right to those benefits. *Vail* announced a corollary rule: an insured who establishes a right to benefits under the policy can recover those benefits as actual damages resulting from a statutory violation.

*Menchaca*, at 497.

Accordingly, Appellee is not entitled to summary judgment on the common law and statutory bad faith claims because Appellee never met its summary judgment burden of proof, and also because H5R provided summary judgment evidence establishing that H5R is entitled to the policy benefits as detailed in Issue No. 3 above and as summarized below in sections B.1.-5.

1.      **Hail Damage Occurred During the Policy Period.**

There is evidence that the hail damage occurred after December 18, 2018 – the date that Appellee admits that Appellee's coverage began. ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3). After H5R became the owner of the House, H5R obtained homeowners' coverage from Appellee beginning on December 18, 2018, and Appellee insured the House continuously under this policy and its renewals until the homeowner's insurance coverage was canceled after this dispute arose. ROA.25-10533.494, 1070, 1075, 1166. (Doc. 49-1, Hailu Aff. ¶ 4; 2018 Policy p. 2; 2019 Policy p. 2; 2020 Policy p. 2) The policies include hail and windstorm coverage. ROA.25-10533.577, 1248. ((Doc. 41-2, 2018 Policy p. 92; Doc. 49-3, 2019 Policy p. 84 Sec. A.4; Doc. 49-4, 2020 Policy p. 84 Sec. A.4)

Appellee's Corelogic report (ROA.25-10533.1257., Doc. 49-5, MSJ Response Exh. B) states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020, with all of these hail events being while Appellee's insurance policy was in place after coverage began on December 18, 2018 ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3) These dates are after the date that coverage began on December 18, 2018. ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3).

**2.    The Coverage Period Is From 2018-2021, Not 2020-2021.**

Next, the Recommendation improperly limits the analysis of the coverage period to a renewal from December 20, 2020 to December 2021. ROA.25-10533.1754. Doc. 65, Recommendation p. 16) This is inaccurate - the 2018 policy (ROA.25-10533.1074. Doc. 49-3) and 2019 renewal (ROA.25-10533.1165. Doc. 49-4) are included in the summary judgment evidence and discussed in H5R's Response in support of H5R establishing the policy/renewal period. ROA.25-10533.1061.  (Doc. 49, Response p. 4) As a result, the ¾ inch hail events described in Appellee's summary judgment evidence on May 24, 2019 and on August 16, 2020 occurred during the coverage period. ROA.25-10533.654, 1257.  (MSJ exh. Doc. 41-7 pg. 19/108; MSJ Response Exh. B, Corelogic Report)

**3.    The House Was Damaged by Hail.**

Appellee's expert report by G. Horne, PE states that snow and ice did not damage the roof tiles – instead - "many of the holes [in the roof] were consistent with impact from hail." ROA.25-10533.645. (Doc. 41-7, Horne Report p. 10 Conclusion #2, 3) The same report contains photos of the house that depict hail damage to the roof. ROA.25-10533.694-97, 1273-74, 1276. (Doc. 41-7 pp. 59-62; MSJ Response Exh. C, Moore Depo. pp. 15- 16, 18. This determination and also the same Corelogic report information was repeated and relied upon in the report of another of Appellee's experts, Eric Moody. ROA.25-10533.800. (Doc. 41-17, Moody Report p. 3)

The deposition testimony by Terry Moore, an uncompensated construction expert designated by H5R, agreed with Appellee's experts that the damage was caused by hail. ROA.25-10533.1347-48, 1362, 1377, 1413-14, 1416-18. (Doc. 49-7, Moore Depo pp. 29-30, 44, 59, 95-96, 98-100) Appellee also point to Appellee's expert's testimony that the hail did not occur during the ice storm on February 15, 2021. Critically, this does not mean that the hail damage occurred outside the coverage period that began on December 18, 2018.

**4.    H5R Does Not Seek Damages for Damage Outside the Scope of Coverage.**

H5R is not seeking damages for losses caused by winter weather and broken pipes. Mr. Hailu subsequently learned from Appellee's representative/inspector, Greg Horne, PE, that hail damaged the roof. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 5)

**5.    Nationwide Breached the Insurance Contract.**

A failure to pay a covered loss is a breach of an insurance contract. H5R did not receive a payment from Appellee on this claim. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 6)

## ISSUE FIVE (Restated)

**The Trial Court Erred When It Granted Summary Judgment in Favor of Appellee and Against H5R on H5R's Chapter 542 Claims Because a Covered Cause of Loss (Hail) Occurred During the Policy Period.** <u>ROA.25-10533.1739, 1810; RE20, 43.</u>

## ARGUMENT AND AUTHORITIES FOR ISSUE FIVE

The Recommendation (ROA.25-10533.1756. Doc. 65, Recommendation p. 18) holds that because there was no coverage for the hail damage to the roof, H5R's Deceptive Trade Practices claim and Insurance Code claim fail. Because there is summary judgment evidence, as detailed above, of coverage for the hail damage to the roof during the policy/renewals period, so that Appellee's untimely denial of coverage was not reasonable, the Court erred when it adopted the Recommendation and granted summary judgment against H5R and in favor of Appellee.

To establish its right to Chapter 542 remedies, an insured must establish "'(1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of [the Prompt-Payment Statute] with respect to the claim. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015).

## A.     H5R Is Entitled to the Policy Benefits.

On page 25 of the MSJ, Appellee argues that H5R's Chapter 542 claims fail because Appellee is entitled to summary judgment on H5R's breach of contract claim, which is the second element. Appellee is not entitled to summary judgment on the

Chapter 542 claim because H5R's summary judgment evidence establishes that H5R is entitled to the policy benefits and that Appellee is not entitled to summary judgment as detailed above in Section I. *See Weiser-Brown Operating Co*, 801 F.3d at 518.

**1.    Hail Damage Occurred During the Policy Period.**

There is evidence that the hail damage occurred after December 18, 2018 – the date that Appellee admits that Appellee's coverage began. ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3). After H5R became the owner of the House, H5R obtained homeowners' coverage from Appellee beginning on December 18, 2018, and Appellee insured the House continuously under this policy and its renewals until the homeowner's insurance coverage was canceled after this dispute arose. ROA.25-10533.494, 1070, 1075, 1166. (Doc. 49-1, Hailu Aff. ¶ 4; 2018 Policy p. 2; 2019 Policy p. 2; 2020 Policy p. 2) The policies include hail and windstorm coverage. ROA.25-10533.577, 1248. ((Doc. 41-2, 2018 Policy p. 92; Doc. 49-3, 2019 Policy p. 84 Sec. A.4; Doc. 49-4, 2020 Policy p. 84 Sec. A.4)

Appellee's Corelogic report (ROA.25-10533.1257., Doc. 49-5, MSJ Response Exh. B) states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020, with all of these hail events being while Appellee's insurance policy was in place after coverage began on December 18, 2018 ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe

Decl. par. 3) These dates are <u>after</u> the date that coverage began on December 18, 2018. <u>ROA.25-10533.483.</u> <u>(Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3)</u>.

**2.      The Coverage Period Is From 2018-2021, Not 2020-2021.**

Next, the Recommendation improperly limits the analysis of the coverage period to a renewal from December 20, 2020 to December 2021. <u>ROA.25-10533.1754.</u> Doc. 65, Recommendation p. 16) This is inaccurate - the 2018 policy (<u>ROA.25-10533.1074.</u> Doc. 49-3) and 2019 renewal (<u>ROA.25-10533.1165.</u> Doc. 49-4) are included in the summary judgment evidence and discussed in H5R's Response in support of H5R establishing the policy/renewal period. <u>ROA.25-10533.1061.</u>  (Doc. 49, Response p. 4) As a result, the ¾ inch hail events described in Appellee's summary judgment evidence on May 24, 2019 and on August 16, 2020 occurred during the coverage period. <u>ROA.25-10533.654, 1257.</u>  (MSJ exh. Doc. 41-7 pg. 19/108; MSJ Response Exh. B, Corelogic Report)

**3.      The House Was Damaged by Hail.**

Appellee's expert report by G. Horne, PE states that snow and ice did not damage the roof tiles – instead - "many of the holes [in the roof] were consistent with impact from hail." <u>ROA.25-10533.645</u> (Doc. 41-7, Horne Report p. 10 Conclusion #2, 3) The same report contains photos of the house that depict hail damage to the roof. <u>ROA.25-10533.694-97, 1273-74, 1276.</u> (<u>Doc. 41-7 pp. 59-62; MSJ Response Exh. C, Moore Depo. pp. 15- 16, 18.</u> This determination and also the same Corelogic report

information was repeated and relied upon in the report of another of Appellee's experts, Eric Moody. ROA.25-10533.800 (Doc. 41-17,Moody Report p. 3)

The deposition testimony by Terry Moore, an uncompensated construction expert designated by H5R, agreed with Appellee's experts that the damage was caused by hail. ROA.25-10533.1347-48, 1362, 1377, 1413-14, 1416-18. (Doc. 49-7, Moore Depo pp. 29-30, 44, 59, 95-96, 98-100) Appellee also point to Appellee's expert's testimony that the hail did not occur during the ice storm on February 15, 2021. Critically, this does not mean that the hail damage occurred outside the coverage period that began on December 18, 2018.

### 4.    H5R Does Not Seek Damages for Damage Outside the Scope of Coverage.

H5R is not seeking damages for losses caused by winter weather and broken pipes. Mr. Hailu subsequently learned from Appellee's representative/inspector, Greg Horne, PE, that hail damaged the roof. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 5)

### B.    Appellee Improperly Pointed to the 2011 Hail Even and There Was No Hail Damage to the Roof When H5R Purchased the House in 2016.

Here, Appellee is liable for H5R's claim because the hail damage occurred during the policy/renewals period. Appellee acted improperly by summarily concluding that the hail damage occurred in 2011, which was outside the coverage period. Instead, the proper coverage period begins with the 2018 policy - which

commences coverage on December 18, 2018 (ROA.25-10533.1074. Doc. 49-3) and

continues with the 2019 renewal (ROA.25-10533.1165. Doc. 49-4), both of which are

included in the summary judgment evidence and discussed in H5R's Response in

support of H5R establishing the policy/renewal period. ROA.25-10533.1061. (Doc.

49, Response p. 4) Appellee breached its duty by pointing to the 2011 hail event

instead of the more recent hail events - Appellee illogically ignores the evidence in the

Appellee's Corelogic report (ROA.25-10533.1257., Doc. 49-5, MSJ Response Exh. B)

states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail

occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred

within a mile of the house as recently as August 16, 2020.

Further, "[t]he roof was not damaged, by hail or otherwise, when H5R became

the owner of the house" in 2016. ROA.25-10533.1069, 1072. (Doc. 49-1, Hailu Decl.

p. 2, ¶ 3; Doc. 49-2, Deed)

In conclusion, there is summary judgment evidence that H5R is entitled to the

policy benefits.

## C.    Appellee Did Not Act Timely Because Appellee Did Not Deny the Claim Until March 27, 2022.

An insurer is required to notify a claimant in writing of the acceptance or

rejection of a claim not later than the 15th business day after the date the insurer

receives all items, statements, and forms required by the insurer to secure final proof

of loss. TEX. INS. CODE § 542.056(a). Appellee did not act timely following Appellee's receipt of the Sayre Report on August 20, 2021 because there is summary judgment evidence that Appellee did not deny the claim until March 27, 2022.

As shown in Issue No. 1, H5R objected to Appellee's hearsay statement that H5R's claim was denied in September 2021 because the log relied upon by Moe does not state a claim denial notice was sent to H5R and there is no actual claim denial document. ROA.25-10533.1746, RE27. Accordingly, Appellee's summary judgment evidence does not establish that Appellee denied the claim in September 2021.

Further, there is summary judgment evidence that the claim was not denied until March 27, 2022, a year after the claim was made. ROA.25-10533.592. (Doc. 41-3, Log p. 3) "H5R did not receive a written statement from Nationwide that it was denying coverage in 2021." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6) "Defendant did not receive a written notice denying coverage until H5R received Defendant's March 27, 2022 letter." ROA.25-10533.1070. (Doc. 49-1, Hailu Decl. ¶ 6)

## D.     Appellee Failed to Pay H5R's Claim.

H5R did not receive a payment from Appellee on this claim. ROA.25-10533.1070. (Doc. 49-1, Hailu Aff. ¶ 6)

**ISSUE SIX (Restated)**

The Trial Court Erred When It Granted Appellee's Objections to <u>Non-Retained2</u> Terry Moore's Expert Testimony That Hail Damaged the Roof. <u>ROA.25-10533.1731, 1807. RE12, 40.</u>

## ARGUMENT AND AUTHORITIES FOR ISSUE SIX

An appellate court reviews the exclusion of expert testimony under an abuse of discretion standard. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). H5R brought this suit because Appellee failed to properly and timely respond to H5R's claim for over a year before ultimately denying H5R's claim. First, Appellee's assertion that Moore may not testify that hail damaged the roof fails because: (1) Appellee asked Mr. Moore about the hail damage during his deposition and Mr. Moore simply answered Appellee's questions; (2) <u>Appellee's (not H5R's)</u> Corelogic report (ROA.25-10533.1257., Doc. 49-5, MSJ Response Exh. B) states that ¾ inch hail occurred at the house as recently as March 24, 2019, .9 inch hail occurred within one mile of the house on May 18, 2019 and ¾ inch hail occurred within a mile of the house as recently as August 16, 2020, with all of these hail events being while Appellee's insurance policy was in place after coverage began on December 18, 2018 <u>ROA.25-10533.483.</u> (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3); and (3)

---

2 Again, Mr. Moore testified during his deposition that he was not being compensated and that he did not expect to be compensated if he testifies at trial. <u>ROA.25-10533.861.</u> (Doc. 44-2 p. 9, Moore Depo. p. 10) Mr. Moore was designated as a non-retained expert. <u>ROA25-10533.923.</u> ( Doc. 44-3, Expert Disclosures p. 2)

Appellee's inspector/engineer issued a report stating the roof was damaged by hail. ROA.25-10533.1530. (Doc. 49-8, Horne Report pp. 10).

Moore's agreement with Appellee's evidence is: (1) not expert testimony; or (2) if it is expert testimony, not prejudicial or harmful. Further, the Order finds that the third factor weighs against exclusion because the May 2024 continuance cured any prejudice. ROA.25-10533.1737, RE18. (Doc. 64, Order p. 7) Because the prejudice was already cured, the witness testimony, if it is expert testimony, should not be excluded.

## A.    Legal Standard – Expert Opinions.

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. In addition to initial disclosures, a party must disclose to the other parties the identity of any witness that it may use at trial to present expert evidence. *See* FED. R. CIV. P. 26(a)(2)(A).

If the witness is one retained or specially employed to provide exert testimony in the case, the report must contain, among other things, "a complete statement of all opinions the witness will express and basis and reasons for them" and "the facts or data considered by the witness in forming them." *See* FED. R. CIV. P. 26(a)(2)(B). Additionally, Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or is harmless." FED.
R. CIV. P. 37(c)(1).

"In evaluating whether a violation of Rule 26 is harmless, the court examines
four factors: (1) the importance of the evidence; (2) the prejudice to the opposing
party of including the evidence; (3) the possibility of curing such prejudice by
granting a continuance; and (4) the explanation for the party's failure to disclose. The
court considers the four-factor test holistically. It does not mechanically count the
number of factors that favor each side." *Fuller v. CIG Fin., LLC*, No. 3:22-cv-1289-D,
2023 WL 8482889, at *2-*3 (N.D. Tex. Dec. 7, 2023) (cleaned up).

The disclosing party bears the burden of proving the failure to timely disclose
was substantially justified or harmless. *See Lopez v. Fun Eats and Drinks, LLC*, No.
3:18-cv-1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021); *accord Coleman
v. Chevron Phillips Chem. Co. LP*, No. CV H-23-350, 2024 WL 460248, at *9 (S.D.
Tex. Feb. 6, 2024); *Fuller*, 2023 WL 8482889, at *3.

## B.     Mr. Moore Is Properly Designated and Appellee Elicited the Deposition Testimony.

Mr. Moore was designated to provide his opinions regarding the repair costs
based upon his observations of the house. ROA25-10533.923, 927, 929. ( Doc. 44-3 p.
2, 44-4, 44-5) Appellee complains because Appellee's counsel asked Mr. Moore
questions during his deposition and he answered them. In other words, when asked by

Appellee t's counsel about the cause of damage to the roof, Mr. Moore testified that he saw hail damage and that he reached this conclusion based upon his professional experience. ROA25-10533.1413-14. (Doc. 49-7, Moore Depo. pp. 95-96) Further, Appellee should not be complaining because (1) Appellee's inspector/engineer issued a report stating the roof was damaged by hail (ROA25-10533.1530. Doc. 49-8, Horne Report pp. 10) and (2) photos of the house depict hail damage to the roof. ROA.25-10533.1273-74, 1276. (Doc. 49-6, Ex. C pp. 15- 16, 18).

In summary, Mr. Moore began his work in construction in 1977 when he started building houses, and over the years has built houses, apartments and commercial buildings, and also performed land development work. ROA.25-10533.1333-34 (Doc. 49-7, Moore Depo. pp. 15-16) Mr. Moore prepared an October 12, 2023 estimate, and then an updated January 22, 2024 estimate, of what Mr. Moore would charge to rebuild the house. ROA.25-10533.927, 929, 1480 (Docs. 44-4, 44-5, 49-7, Moore Depo. p. 162)

There is no requirement that Mr. Moore's report provide opinions regarding cause or date of damage, as these topics were not part of his designation. Similarly, when Mr. Moore was asked questions by Appellee's counsel about settlement, he simply answered the questions. In other words, Mr. Moore should not be stricken because Appellee's counsel elicited additional opinions from Mr. Moore during his deposition. Mr. Moore's designation states as follows:

Terry Moore
cell 972.742.2804
GARRETT MOORE COMPANY &
THE AUSTIN KAY COMPANY
4625 Greenville Ave., Suite 303
Dallas, Texas 75206
O: 972.968.0000 C: 972.742.2804
tgm@garrettmoorecompany.com
www.GarrettMooreCompanies.com
Mr. Moore has not authored any publications in the last ten years, will
not be compensated for his study and testimony, and has not testified as
an expert at trial or by deposition within the preceding four years. Mr.
Moore is not currently being compensated, but it is anticipated that Mr.
Moore will be compensated in the event that Mr. Moore is deposed or
appears as a witness at trial.
Mr. Moore's resume and initial letter report containing his estimate to
complete the necessary work are attached and incorporated as if set forth
herein.

ROA.25-10533.923. (Doc. 44-4, Expert Disclosures)

In other words, when asked by Appellee's counsel about the cause of damage to

the roof, Mr. Moore testified that he saw hail damage and that he reached this

conclusion based upon his professional experience. ROA.25-10533.1413-14. (Doc.

49-7, Moore Depo. pp. 95-96)

The Magistrate Judge's Recommendation finds that the expert testimony was

not properly disclosed under Rule 26(a)(2). ROA.25-10533.1736. (Doc. 64,

Recommendation p. 6) First, it is doubtful that Moore's agreement with Appellee's

expert and Appellee's Corelogic report that hail caused the roof damage is expert

testimony. ROA.25-10533.483. (Doc. 41-1, Def. MSJ Exh. A-1 Moe Decl. par. 3)

This determination, and also the same Corelogic report information, was repeated and relied upon in the report of another of Appellee's experts, Eric Moody. ROA.25-10533.800. (Doc. 41-17, p. 3)

Does it really require specialized knowledge to look at photos of the roof and agree with Appellee that hail caused the roof damage? Again, Appellee's inspector/engineer issued a report stating the roof was damaged by hail ROA.25-10533.1530. (Doc. 49-8, Horne Report pp. 10) and (2) photos of the house depict hail damage to the roof. ROA.25-10533.1273-74, 1276. (Doc. 49-6 pp. 15- 16, 18).

Second, even if the testimony is expert testimony, Moore is qualified and was timely designated as an expert regarding the construction costs. ROA25-10533.923, 927, 929. (Doc. 44-3, 44-4 & 44-5,  In summary, Mr. Moore began his work in construction in 1977 when he started building houses, and over the years has built houses, apartments and commercial buildings, and also performed land development work. ROA.25-10533.1273-74, 1276.  Doc. 49-7, Moore Depo. pp. 15-16. Mr. Moore prepared an October 12, 2023 estimate, and then an updated January 22, 2024 estimate, of what Mr. Moore would charge to repair/rebuild the house. ROA25-10533.923, 927, 929, 1480. (Docs. 44-4, 44-5, 49-7, Moore Depo. p. 162)

Additionally, the Court should consider Judge Fitzwater's Memorandum Opinion and Order that analyzed a similar disclosure under Rule 26(a)(2):

Viewing the four-factor test holistically, the court concludes that Dr. Indresano's expert testimony should not be stricken or excluded based on a failure to comply with Rule 26(a)(2)(C). "[T]he exclusion of evidence is a harsh penalty and should be used sparingly." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir.1995)). Because the evidence is important and because a less severe remedy will largely cure any prejudice that defendants suffered due to Galvez's noncompliance, the court declines to exclude the testimony and considers alternative remedies to cure any prejudice that defendants suffered.

In reaching this conclusion, the court notes that the alternative of requiring supplemental disclosures from Galvez is likely unnecessary and ineffective. This is so because it appears that, during Dr. Indresano's deposition, he testified to the relevant information that would be included in a supplemental disclosure. So defendants have obtained through this deposition testimony at least as much as, if not more than, what they would have obtained in proper disclosures. This concept is captured in Rule 26(e)(1)(A). That rule requires supplemental disclosures when the "corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e)(1)(A).

*Galvez v. KLLM Transp. Servs*., LLC, 575 F. Supp.3d 748, 758 (N.D. Tex. 2021).

## C.     Consideration of the Four Facts Weighs Against Exclusion.

In evaluating whether a violation of Rule 26 is harmless, the Court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. The court considers the four-factor test holistically. It does not mechanically count the

number of factors that favor each side. *Fuller v. CIG Fin., LLC*, No. 3:22-cv-1289-D, 2023 WL 8482889, at *2-*3 (N.D. Tex. Dec. 7, 2023).

When Mr. Moore was asked questions by Appellee's counsel about settlement, he simply answered the questions. Appellees are not prejudiced by the substance of the testimony, as noted on page 6 of the Recommendation. ROA.25-10533.1744, RE25. (Doc. 64, Recommendation p. 6 ("Mr. Moore's testimony is duplicative or of minimal importance.") In other words, Mr. Moore should not be stricken because Appellee's counsel elicited additional testimony, whether lay, expert or both, from Mr. Moore during his deposition. Contrary to the Recommendation, the first two factors weigh against exclusion.

Next, the third factor weighs against exclusion because the prejudice, if any, has already been cured because a continuance was already granted, as noted by the Recommendation on page 7. ROA.25-10533.1745, RE26. (Doc. 64, Recommendation p. 7) ("The third factor – the possibility that a continuance could cure any prejudice – weighs against exclusion because the Court vacated the trial setting and all pretrial deadlines in May 2024. *See* Dkt. No. 55.")

Finally, regarding the fourth factor, the Recommendation states on page 8 that H5R's Response to Appellee's Motion for Summary Judgment (the "MSJ Response") attempts to present Mr. Moore as an expert on causation. ROA.25-10533.1746. (Doc. 64, Recommendation p. 8) While H5R's MSJ Response does point to Mr. Moore's

deposition testimony, and particularly on page 5, the MSJ Response also points to

<u>Appellee's</u> evidence establishing the damage to the roof was caused by hail:

> ### 2. The House Was Damaged by Hail.
> Defendant argues that there is no evidence that the House was damaged by hail. But, once again, Defendant ignores its own evidence – Defendant's expert report by G. Horne, PE states "many of the holes [in the roof] were consistent with impact from hail." <u>See Doc. 41-7 p. 9.</u> The same report contains photos of the house that depict hail damage to the roof. <u>See Doc. 41-7 pp. 59-62; Exh. B pp. 15- 16, 18.</u> This determination and also the same Corelogic report information was repeated and relied upon in the report of another of Defendant's experts, Patrick Kemp. <u>See Doc. 41-17, p. 3</u>
>
> Defendant also ignores the deposition testimony by Terry Moore, an uncompensated construction expert designated by H5R, who agreed with Defendant's experts that the damage was caused by hail. <u>See Exh. C, Moore Depo pp. 29-30, 44, 59, 95-96, 98-100.</u>

<u>ROA.25-10533.1062-63.</u> (Doc. 49, MSJ Response pp. 5-6 (emphasis in original)) The

fourth factor also weighs against exclusion.

"[T]he exclusion of evidence is a harsh penalty and should be used sparingly."

*Galvez*, 575 F.Supp.3d at 758 (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th

Cir. 2008) (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190

(8th Cir.1995)). Here, the factors all weigh against exclusion. Nonetheless, even if the

Court disagrees, the Recommendation finds that the third factor weighs against

exclusion because the May 2024 continuance cures any prejudice. (Doc. 64, Order p.

7) Because the prejudice is already cured, the witness testimony should not be

excluded.

In conclusion, the District Court abused its discretion when it struck Mr. Moore's testimony.

## CONCLUSION AND PRAYER

For the foregoing reasons, Appellant H%R, LLC prays that the order granting summary judgment on H5R's claims be reversed, and the case be remanded for further proceedings consistent with this Court's opinion, and that Appellant receives such other relief to which it is justly entitled, with costs of court for this appeal.

Respectfully submitted,

PALMER LEHMAN SANDBERG, PLLC,

By: /s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg
State Bar No. 00790051
jsandberg@pamlaw.com
8350 N. Central Expressway; Suite 1111
Dallas, Texas 75206
(214) 242-6444/ (214) 265-1950 – Fax
**COUNSEL FOR   APPELLANT
H5R, LLC**

44

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing instrument was served upon opposing counsel and the pro se parties, on the 8th day of July, 2025 via the appellate CM/ECF system.

s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,540 words, as determined by the word-count function of Microsoft Word 365, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

/s/ Jeffrey R. Sandberg_
Jeffrey R. Sandberg